**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:16-cr-00003-MR-WCM**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| **CODY WAYNE THOMAS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's "Request for Compassionate Release or Sentence Modification under 18 U.S.C. § 3582(c)(1)(A)" [Doc. 41].

## I.    BACKGROUND

In January 2016, the Defendant Cody Wayne Thomas was charged in a Bill of Indictment with one count of possession with the intent to distribute more than 50 grams of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); and one count of possession of a firearm after being convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1) (Count Three).  [Doc. 1]. The Defendant pled guilty pursuant to a written plea agreement to Count

One. [Docs. 14, 16]. Upon his plea of guilty, the Government dismissed Counts Two and Three. [See Doc. 28].

According to the Factual Basis filed with the Defendant's Plea Agreement, the Defendant was found sleeping in a vehicle by a Cleveland County Sheriff's Office deputy. [Doc. 15 at 1]. The deputy observed an assault-style rifle and handgun in the vehicle, along with what appeared to be bags containing a crystal substance. [Id. at 1-2]. During a subsequent search of the vehicle and the Defendant, law enforcement found a total of 167.7 grams of actual methamphetamine. [Id. at 2]. In a later interview, the Defendant admitted to being a drug dealer and stated that "[a]t the height of his dealing he was buying one-pound quantities" to resell. [Id. at 3]. He further admitted being a previously convicted felon for first degree burglary out of South Carolina, and he stated that he carried the handgun as protection from the victims of that offense. [Id. at 2].

In June 2016, the Court sentenced the Defendant to a term of 135 months' imprisonment, which was the low end of the advisory Guidelines range, plus five years of supervised release. [Doc. 28]. The Defendant is

currently serving his sentence at FCI Edgefield in Edgefield, South Carolina, with a projected release date of July 14, 2024.[1]

On July 30, 2020, the Defendant filed a motion for compassionate release or sentence reduction, arguing that his medical condition (Hypohidrotic Ectodermal Displaysia) placed him at a higher risk of severe illness or death from the COVID-19 virus. [Doc. 31]. The Court denied the Defendant's motion on September 14, 2020. [Doc. 36]. The Defendant sought additional relief by filing a motion to reconsider, which the Court denied on October 13, 2020. [Docs. 39, 40].

In March 2023, the Defendant filed the present motion, again seeking compassionate release or a sentence reduction. [Doc. 41]. The Court directed the Government to respond to the Defendant's motion. [Text-Only Order entered March 30, 2023]. The Government filed its response on April 28, 2023. [Doc. 44]. The Court received the Defendant's Reply on May 11, 2023. [Doc. 45].

## II. DISCUSSION

As a general matter, the Court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The only exceptions to

_____

[1]See https://www.bop.gov/inmateloc/ (last accessed May 31, 2023).

this general rule are the exceptions specifically delineated by Congress. Id. One such exception is the compassionate release exception, which gives the Court discretionary authority to reduce a sentence upon a finding that "extraordinary and compelling reasons warrant" the reduction. Id. § 3582(c)(1)(A)(i).

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Government concedes that the Defendant has satisfied these statutory requirements here; accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must

also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable.  Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions.  See U.S.S.G. § 1B1.13.  This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not yet updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release.  In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence.  See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)").  Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise."  Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).  Nevertheless, the Court of Appeals has recognized that the policy statement "remains helpful guidance even when motions are filed by defendants."

5

United States v. Hargrove, 30 F.4th 189, 194-95 (4th Cir. 2022) (quoting McCoy, 981 F.3d at 282 n.7).  The Defendant bears the burden of establishing that he is eligible for a sentence reduction.  United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Here, the Defendant again argues that his skin condition, hypohidrotic ectodermal dysplasia (HED), when combined with the dangers of COVID-19 in a prison setting, justifies his early release. As the Court previously found, however, this condition is not terminal and is being appropriately managed within the BOP.  A review of the Defendant's medical records indicates that he has not had any significant issues related to HED.  [See Doc. 43].  Further, these records indicate that the Defendant contracted COVID-19 in 2020.  [Id. at 51].  He apparently recovered without any significant complications, as none are noted in the records.  Subsequently, the Defendant received multiple COVID-19 vaccines.  [Id. at 39].  According to the CDC, vaccine effectiveness studies indicate that the mRNA COVID-19 vaccines can significantly reduce the risk of contracting COVID-19 and can offer significant

protection against severe illness, hospitalization, and death.[2]  In short, the fact that the Defendant faces a potential risk of contracting the virus again while incarcerated, without more, is not sufficient to justify the relief he requests.  See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").  For all these reasons, the Court concludes that the Defendant's medical condition does not constitute an extraordinary and compelling health reason for his release.

The Defendant further argues that his mother suffers from several medical conditions that limit her ability to provide self-care and that she is in need of a caretaker.  [Doc. 41 at 3].  According to the PSR, however, the Defendant's mother is married and has a number of other relatives who live nearby who could assist her.  [Doc. 24 at ¶¶ 35-36].  The Defendant has failed to show that he alone can assist in her care.  Moreover, the Defendant

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last accessed May 31, 2023).

has not shown that his mother's needs are so extreme that they rise to the level of an extraordinary and compelling reason for his release. The defendant's filings list a number of his mother's conditions. [Doc. 42 at 29]. While some of these conditions (such as hypertension) are serious, others (such as seasonal allergies) are decidedly less so. In any event, the Defendant has failed to provide any evidence as to how his mother's conditions require any level of care by another. Even in her own letter to the Court, the Defendant's mother merely states that "Cody would be a big help at home." [Doc. 42 at 30]. As such, his mother's purported need for care fails to qualify as an extraordinary and compelling reason for his release.

The Defendant further argues that his early release is warranted in order to allow him to represent his and his father's interests in a family trust. [Doc. 41 at 3]. The Defendant has failed to show, however, that his father's legal situation requires the Defendant's intervention or that it is necessary for the Defendant to be out of custody to protect their respective interests.

Finally, the Defendant argues that the BOP has "failed to offer guidance" regarding the proper application of good time credit toward his release date and that halfway house closures are preventing inmates from receiving their full amount of allowed time in a halfway house placement.

8

[Doc. 41 at 3].  The BOP's determination of his sentencing credit is a matter for the Attorney General, not the sentencing court.  See United States v. Wilson, 503 U.S. 329, 335 (1992).  A prisoner seeking review of the computation of his sentence credit must first seek administrative review of that computation through the Bureau of Prisoners.  Only after such administrative remedies have been exhausted can a prisoner then seek judicial review of his sentence computation.  Id.  Further, because "[a] claim for credit against a sentence attacks the computation and execution of a sentence rather than the sentence itself," United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989), such claims must be raised pursuant to 28 U.S.C. § 2241 in the district of confinement.  In re Jones, 226 F.3d 328, 332 (4th Cir. 2000); 28 U.S.C. § 2241(a).  As for the lack of available halfway house placements, the circumstances described by the Defendant are not unique to him and therefore are not sufficiently extraordinary or compelling grounds for the relief requested.

For all these reasons, the Court concludes none of the grounds cited by the Defendant, considered either singly or in combination, constitute extraordinary and compelling reasons for his early release.

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted.  See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

As the Court previously noted in denying the Defendant's first request for compassionate release [Doc. 36 at 7], the Defendant's offense of conviction was extremely serious.  He possessed a tremendous quantity of methamphetamine with the intent to distribute.  As this Court has repeatedly noted, methamphetamine has had a devastating effect upon the communities in Western North Carolina and elsewhere.  Here, the Defendant possessed well over more than double the quantity necessary to trigger a ten-year mandatory minimum sentence.

Additionally, the Defendant has a prior conviction for a home invasion. At the time of the arrest in the present case, he illegally possessed two firearms, one of which he said was to protect him from the victims of that burglary.  For all these reasons, the Court concludes that a sentence of 135 months reflects the seriousness of the offense, promotes respect for the law, avoids unwarranted sentencing disparities, and provides general deterrence

to others who might commit similar crimes. While the Defendant has successfully completed a number of programs while in custody and has gone some time since his last disciplinary infraction, the Court finds that the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's "Request for Compassionate Release or Sentence Modification under 18 U.S.C. § 3582(c)(1)(A)" [Doc. 41] is **DENIED**.

**IT IS SO ORDERED.**

Signed: June 1, 2023

Martin Reidinger
Chief United States District Judge

11